UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HOUSE OF OXFORD, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-3282** |
| | **C/W 06-5464** |
| **STATE OF LOUISIANA** | |
| | **SECTION: "K"(2)** |

## ORDER AND REASONS

Before the Court are two motions involving two separate proceedings between the parties. For the sole purpose of considering these motions, these proceedings will be consolidated in furtherance of judicial economy.[1] The first motion, brought by the State of Louisiana, *ex rel* Commissioner Murphy, J. Painter, Office of Alcohol and Tobacco Control (ATC), is a Motion to Remand to State District Court and Dismissal under F.R.C.P. 12(b)(1) (Rec.Doc.No. 21).

---

[1] During status conference with the parties, the Court noted that these case would be consolidated for the sole purpose of deciding whether the Tax Injunction Act applies, though there was some dispute among the parties whether the cases represented the same case or controversy. *See* Min. Entry (Rec.Doc.No. 18).

The second motion is a Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) brought by House of Oxford, Inc (Oxford). Both of these motions involve Civil Action No. 06-5464.[2] After reviewing the pleadings, memoranda, and relevant law, the Court hereby grants ATC's Motion to Remand and dismisses Civil Action No. 06-3282 for lack of jurisdiction due to the Tax Injunction Act.

## I. BACKGROUND

Despite there being two proceedings with somewhat of a convoluted procedural history pending before the Court, the question presented is relatively simple. That is, the question presented is whether the Tax Injunction Act (TIA) bars these proceedings from continuing in federal court because they involve issues of state taxation.

With this legal question in mind, the pertinent background information involves Oxford's relationship with Louisiana, and the Louisiana statutory scheme for regulation and taxation of wholesale distributors of tobacco products. Oxford, a New Jersey corporation, is engaged in the wholesale distribution of tobacco products in the United States. *See* Def.'s Opp. Mot. Remand, p.2 (Rec.Doc.No. 23). They do not operate any stores, have any offices, or otherwise have any property within the state of Louisiana. *Id.* Rather, they sell tobacco products directly to Louisiana retail sellers, shipping the products through a common carrier. *Id.*

---

[2] This action was a suit initially filed in Louisiana state court and removed to the Eastern District of Louisiana.

Louisiana contends that as a wholesaler, Oxford falls under both the ambit of Title 26 of the Louisiana Revised Statutes, otherwise known as the Alcoholic Beverage and Tobacco Law, as well as the complementary tobacco taxation laws contained in Title 47 of the Louisiana Revised Statutes. LA. REV. STAT. ANN. §§ 26:901, *et seq*. and 47:841, *et seq.* (2006). Title 26 and Title 47 define a wholesale dealer as the following:

> a dealer whose principal business is that of a wholesaler, who sells cigarettes, cigars, or other tobacco products to retail dealers for the purpose of resale, who is a bona fide wholesaler, and fifty percent of whose total tobacco sales are to retail stores other than its own or its subsidiaries within Louisiana. Wholesale dealer shall include any person in the state who acquires cigarettes solely for the purpose of resale in vending machines, provided such person services fifty or more cigarette vending machines in Louisiana other than his own, and a Louisiana dealer who was affixing cigarette and tobacco stamps as of January 1, 1974.

LA. REV. STAT. ANN. §§ 26:901; 47:842.

Under the Louisiana statutory scheme, wholesaler dealers of tobacco are required to obtain a permit that is different from that permit which is necessary for retail sellers. LA. REV. STAT. ANN. § 26:902(5). Indeed, the permit requirement is nearly exhaustive with respect to all commercial activity that involves tobacco distribution. As is clearly implied from the statutory language the permit is issued to complement the collection of the tobacco tax. The relevant provision reads:

> Every person who sells or is about to engage in the business of selling at retail, at wholesale, or by vending machine, or is about to engage in the business of receiving unstamped and/or non-tax paid cigarettes, cigars, or other tobacco products, or who is engaged in the business of receiving stamped cigarettes at wholesale or any or all of the articles taxed in accordance with Title 47 of the Louisiana Revised Statutes of 1950, shall first apply to and obtain from the

office a permit for each place of business and each vending machine.

LA. REV. STAT. ANN. §§ 26:906(A) and 47:844.[3] In this way, wholesale permits are required for wholesale sellers of tobacco products regardless of whether the cigars, cigarettes, or other tobacco products are unstamped or non-tax paid.[4]

Similarly, Louisiana's taxation scheme for tobacco products is comprehensive. Section 841 has been recently amended and in pertinent part reads as follows:

> There is hereby levied a tax upon the sale, use, consumption, handling, or distribution of all cigars, cigarettes, and smoking and smokeless tobacco, as defined herein, within the state of Louisiana, according to the classification and rates hereinafter set forth.

LA. REV. STAT. ANN. § 47:841.[5]

Moreover, Section 854 provides that the intent and purpose of Title 47, Chapter 8, entitled "Tobacco Tax" as follows:

> It is the intent and purpose of this Chapter to levy an excise tax on all cigars, cigarettes and smoking tobacco, as defined in this Chapter, sold, used, consumed, handled or distributed in this state, except as provided in R.S. 47:855, and to collect same from the dealer who first sells, uses, consumes, handles, or distributes the same in the State of Louisiana.

LA. REV. STAT. ANN. § 47:854.

---

[1] Section 844 of Title 47 tracks the language of Section 906(A) of Title 26 almost entirely with a parallel reference to Title 26. This the Court finds as illustrative of the fact that both titles are meant to serve each other.

[4] Louisiana monitors those tobacco products for which taxes have been paid by affixing a stamp on the commodity itself. LA. REV. STAT. ANN. § 26:901.

2

Considering Louisana's statutory scheme for regulation and taxation of tobacco commodities and their distribution, the Court proceeds to the legal merits of the pending motions.

## **II. LEGAL STANDARD**

In cases removed from state court, the removing, the removing party has the burden of establishing federal jurisdiction over the controversy. *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 692 (5th Cir. 1995); *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992); *Kidd v. SouthwestAirlines Co.*, 891 F.2d 540, 543 (5th Cir. 1990); *see also* Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3739, at 470 (noting that it "is well-settled...[that] the removing party bears the burden of proof as to all elements of the removal's propriety"). Furthermore, federal courts have been directed to construe the removal statute against removal and in favor of remand to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *Crane v. New Orleans Real Estate Investors Ass'n, Inc.*, 2004 WL 1555253 (E.D. La. July 8, 2004).

This rule of strict construction is "consistent with the notion that federal courts are courts of limited jurisdiction." Wright & Miller, § 3721 at 348-51. Finally, all disputed questions of fact and all ambiguities in the controlling state law must be resolved in favor of the plaintiff. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995); *B Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).

"Generally, the remand of a case that has been removed to federal court is governed by

statutory provisions found at 28 U.S.C. §§ 1441(c) and 1447(c)." *Buchner v. F.D.I.C.*, 981 F.2d 816, 819 (5th Cir. 1993). Section 1441(c) provides:

> Whenever a separate and independent claim or cause of action within the jurisidiction conferred by section 1331 of this title [federal question jurisdiction], is jointed with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which state law predominates.

28 U.S.C. § 1441(c). Section 1447(c) provides in pertinent part:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. §1447(c).

These two sections provide that district courts with the general authority to remand a case over which it has no subject matter jurisdiction. *See Buchner*, 981 F.2d at 819. Furthermore, a federal district court may assert lack of subject matter jurisdiction, *sua sponte*, at any time. *See Russell,* 302 F.Supp.2d 654; *Patterson,* 885 F.Supp. 145; *Wright & Miller*, § 1350.

### III. ANALYSIS

Being that the Tax Injunction Act is a jurisdictional limitation on the power of the federal court when issues of state taxation are involved and there are efficacious state remedies for challenging the tax, the question before the Court becomes whether Oxford's commercial

activities fall within the scope of application of the Louisiana statutory scheme for regulation and taxation of the distribution of tobacco commodities. For the reasons assigned below, the Court finds that the Tax Injunction does apply in the instant matter, and remands the action to state court and denies the 12(b)(6) motion. Moreover, the Court finds that Civil Action No. 06-3282 should be dismissed for lack of subject matter jurisdiction due to the Tax Injunction Act.

The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This Court is quite familiar with the scope of application of the TIA, and recognizes that the statute "represents policy of restraint' in federal courts." *Kruger v. Garden Dist. Ass'n*, 1999 WL 262107, *2 (E.D.La. Apr. 30, 1999)(*quoting Folio v. City of Clarksburg, West Virginia*, 134 F.3d 1211, 1214 (4th Cir. 1998)(internal citations omitted). "Federal courts 'are under an equitable duty to refrain from interfering with a State's collection of its revenue' in light of the 'imperative need of a State to administer its own fiscal operations." ' *Id.*

Deciding whether to apply the TIA is not a matter of discretion for the Court. The TIA creates a "non-waivable jurisdictional bar that absolutely precludes federal courts from assessing the validity of state or local taxation schemes. *Id.; see also Keleher v. New England Tel. & Tel. Co.*, 927 F.2d 547 (2d Cir. 1991); *Hardwick v. Cuomo*, 891 F.2d 1097, 1103-04 (3rd Cir. 1989).

A two-part analysis is used to determine whether the TIA is applicable. *Home Builders Ass'n of Mississippi v. City of Madison, Mississippi*, 143 F.3d 1006, 1010 (5th Cir. 1998). First, a court must determine whether the dispute in question involves a tax or a regulatory fee. *Id.* If the

suit involves a fee, then the TIA does not apply, and jurisdiction may be appropriate. *Id.* Second, even if the dispute involves a "tax" for purposes of the Act, a district court may still exercise jurisdiction if the state does not provide a plain, speedy and efficient remedy. *Id.* (*citing Cumberland Farms, Inc., v. Tax Assessor, State of Maine*, 116 F.3d 943, 945 (1st Cir. 1997); *Collins Holding Corp. v. Jasper City, South Carolina*, 123 F.3d 793, 799 (4th Cir. 1997).

First, the Court finds that this matter indeed involves a tax, though it also involves fees.[6] The permit system serves as the instrument for the collection of the Louisiana tobacco tax. That is, the ATC can look to its list of permitees to determine who has and who has not paid their tobacco taxes. Consequently, the ATC's assertion that Oxford is subject to the permit requirement necessarily implies that they are subject to the tax as well. Therefore, the Court finds that the ATC's permit requirement is the collection of a tax within the meaning of the Tax Injunction Act.

Second, the Court finds that there is a "plain, speedy and efficient remedy in the court of the state" to challenge the taxation. 18 U.S.C. § 1341. "In making this determination, the Court must consider whether the state remedy 'provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Kruger v. Garden Dist. Ass'n*, 1999 WL 262107, at *2 (*quoting Folio v. City of Clarksburg, West Virginia*,

---

[6] As Oxford correctly notes, the charges imposed in Title 27 are explicitly referred to as fees. LA. REV. STAT. ANN. § 26:903; *see also* Def.'s Opp. Mot. Remand, p. 4. The fees are also expressly "to help defray the cost of printing, processing, and issuing the registration certificates or permits, providing server or seller training, and enforcement expenses of the office of alcohol and tobacco control." LA. REV. STAT. ANN. § 26:906(C). However, Defendant does not acknowledge the transparent relationship between the permit system and the taxation of tobacco commodities that flow through Louisiana.

134 F.3d at 1214) (internal citations omitted). In other words, the state court must provide a procedural vehicle that affords taxpayers the opportunity to raise their federal constitutional claims, and a state's remedy is adequate if it provides taxpayers with a "complete judicial determination that is ultimately reviewable in the United States Supreme Court." *Id*; *see also Lodge Properties, LLC v. City of New Orleans*, 2004 WL 1543183, at *2 (E.D.La. July 7, 2004)(Duval, J.).

The Court does not decide the merit of the ATC's assertion that Oxford is subject to the permit requirement. Rather, the Court finds that there has been a sufficient showing by ATC that is attempting to collect a tax from Oxford. In other words, by evading the permit requirement, Oxford is frustrating Louisiana's collection of the tobacco tax. As a putative taxpayer, there is nothing preventing Oxford from raising challenges to the collection in Louisiana state court. Moreover, their federal constitutional claims can adequately be addressed there, being that the state courts are of general jurisdiction.

Furthermore, a federal district court may assert lack of subject matter jurisdiction, *sua sponte,* at any time. *See Russell v. Choicepoint Servs., Inc.,* 302 F.Supp.2d 654 (E.D.La.2004); *Patterson v. Hamrick*, 885 F.Supp. 145 (E.D.La.1995); *Wright & Miller*, § 1350. The Court finds that the Tax Injunction Act also bars the exercise of subject matter jurisdiction over Civil Action No. 06-3282 because the proceedings are sufficiently related. Accordingly,

**IT IS ORDERED** that ATC's Motion to Remand (Rec.Doc.No. 21) pending in Civil Action No. 06-5464 is hereby **GRANTED** for the reasons assigned herein.

**IT IS FURTHER ORDERED** that Oxford's 12(b)(6) Motion to Dismiss (Rec.Doc.No.

22) pending in Civil Action No. 06-5464 is **DENIED**.

**IT IS FURTHER ORDERED** that Civil Action No. 3282 is **DISMISSED** for lack of subject matter jurisdiction due to the Tax Injunction Act.

New Orleans, Louisiana, on this  24th  day of October, 2006.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**